# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY BERGER**, individually and on behalf of all others similarly situated, | : : : : | CIVIL ACTION NO. 1:17-CV-1836 (Chief Judge Conner) |
| Plaintiff | : : | |
| v. | : : | |
| **BELL-MARK TECHNOLOGIES CORPORATION**, | : : : | |
| Defendant | : | |

## MEMORANDUM

Before the court is the joint motion (Doc. 17) of plaintiff Jeffrey Berger ("Berger") and defendant Bell-Mark Technologies Corporation ("Bell-Mark")[1] for judicial approval of the parties' settlement agreement. The parties seek to resolve Berger's claims against Bell-Mark under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the New Jersey Wage and Hour Law ("NJWHL"), N.J. STAT. ANN. § 34:11-56a *et seq.*, and the New Jersey Wage Payment Law ("NJWPL"), N.J. STAT. ANN. § 34:11-4.1 *et seq.*, as well as Berger's claim brought pursuant to New Jersey debt-collection law and his common-law unjust enrichment claim. For the reasons that follow, the court will grant in part and deny in part the parties' motion.

---

[1] In the joint motion, Bell-Mark clarifies that Bell-Mark Technologies Corporation is based in Dover, Pennsylvania and that Berger worked for Bell-Mark Sales Co., Inc., which is based in Pine Brook, New Jersey. (Doc. 17 at 1-2). For simplicity, the court will refer to defendant as Bell-Mark.

## I. Factual Background & Procedural History

Bell-Mark employed Berger as a regional sales manager at its Pine Brook, New Jersey, location from July 2015 to August 2017. (Doc. 1 ¶¶ 1, 12). According to the complaint, Berger and other similarly situated individuals frequently worked in excess of forty (40) hours per week without receiving overtime pay or compensation for "non-exempt duties" performed beyond their regular shift end time. (Id. ¶¶ 12-13). Bell-Mark also allegedly failed to pay Berger certain commissions earned, (id. ¶ 12), or reimburse him for certain "business costs," (see id. ¶ 62; see also Doc. 17 at 2).

Berger commenced this action by filing a six-count complaint on October 6, 2017, asserting violations of the FLSA, the NJWHL, the NJWPL, and New Jersey's debt-collection law, as well as a common-law claim of unjust enrichment. Bell-Mark filed an answer on January 19, 2018, denying each of Berger's claims. After engaging in court-ordered mediation, the parties arrived at a settlement and release agreement ("proposed settlement"). Berger and Bell-Mark filed the instant joint motion on February 15, 2019, seeking judicial approval of their proposed settlement.

## II. Legal Standard

Congress enacted the FLSA for the purpose of "protect[ing] all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark.-Best Freight Sys., 450 U.S. 728, 739 (1981); see also 29 U.S.C. § 202(a). The statute was designed to ensure that each employee covered by the Act would receive "[a] fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." Barrentine, 450 U.S. at 739 (internal

2

citations and quotations omitted).  To safeguard employee rights made mandatory by statute, a majority of courts have held that *bona fide* FLSA disputes may only be settled or compromised through payments made under the supervision of the Secretary of the Department of Labor or by judicial approval of a proposed settlement in an FLSA lawsuit.[2]

The Third Circuit has not addressed whether FLSA actions claiming unpaid wages may be settled privately prior to obtaining judicial approval.  Absent such guidance, district courts within the Third Circuit have routinely adopted the majority position and have required judicial approval as a precondition to amicable resolution of claims.[3]  Courts typically employ the considerations set forth by the Eleventh Circuit in Lynn's Food Stores, 679 F.2d 1350, when evaluating proposed FLSA settlement agreements.  See, e.g., Kraus, 155 F. Supp. 3d 516; McGee, 2014 WL 2514582; Brown, 2013 WL 5408575; Deitz, 2013 WL 2338496; Altenbach, 2013 WL

---

[2] See, e.g., Lynn's Food Stores, Inc. v. U.S. *ex rel.* U.S. Dep't of Labor, 679 F.2d 1350, 1354-55 (11th Cir. 1982); Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015); Copeland v. ABB, Inc., 521 F.3d 1010, 1014 (8th Cir. 2008); Taylor v. Progress Energy, Inc., 493 F.3d 454, 460, 462 (4th Cir. 2007), superseded by regulation on other grounds as recognized by Whiting v. The Johns Hopkins Hosp., 416 F. App'x 312, 316 (4th Cir. 2011); Walton v. United Consumers Club, Inc., 786 F.2d 303, 305-07 (7th Cir. 1986); but see Martin v. Spring Break '83 Prods., L.L.C., 688 F.3d 247, 256 (5th Cir. 2012).

[3] See, e.g., Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516 (E.D. Pa. 2016); McGee v. Ann's Choice, No. 12-2664, 2014 WL 2514582 (E.D. Pa. June 4, 2014); Brown v. TrueBlue, Inc., No. 1:10-CV-514, 2013 WL 5408575 (M.D. Pa. Sept. 25, 2013); Deitz v. Budget Renovations & Roofing, Inc., No. 4:12-CV-718, 2013 WL 2338496 (M.D. Pa. May 29, 2013); Altenbach v. Lube Ctr., No. 1:08-CV-2178, 2013 WL 74251 (M.D. Pa. Jan. 4, 2013); Cuttic v. Crozer-Chester Med. Ctr., 868 F. Supp. 2d 464 (E.D. Pa. 2012); Brumley v. Camin Cargo Control, Inc., No. 08-1798, 2012 WL 1019337 (D.N.J. Mar. 26, 2012); Morales v. PepsiCo, Inc., No. 11-6275, 2012 WL 870752 (D.N.J. Mar. 14, 2012).

3

74251; Cuttic, 868 F. Supp. 2d 464; Brumley, 2012 WL 1019337; Morales, 2012 WL 870752.

Under Lynn's Food Stores, a proposed compromise may satisfy judicial review if it is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." Lynn's Food Stores, 679 F.2d at 1355 (emphasis added). When a reviewing court is satisfied that the agreement in fact resolves a *bona fide* dispute, it proceeds in two phases: first, the court assesses whether the parties' agreement is fair and reasonable to the plaintiff employee; and second, it determines whether the settlement furthers or "impermissibly frustrates" implementation of the FLSA in the workplace. Kraus, 155 F. Supp. 3d at 523; see McGee, 2014 WL 2514582, at *2; Brown, 2013 WL 5408575, at *1; Altenbach, 2013 WL 74251, at *1.

## III. Discussion

The court will consider *seriatim* the terms of the proposed settlement, the nature of the parties' dispute, and the fairness and reasonableness of the compromise as to Berger and as measured against the intent of the FLSA. See Lynn's Food Stores, 679 F.2d at 1355.

### A. Terms of Proposed Settlement

Under the terms of the proposed settlement, Bell-Mark agrees to pay $9,000.00 to resolve Berger's claims.[4] (See Doc. 17-1 ¶ 2). Berger will receive

---

[4] If an amicable resolution is not reached, the parties agree that the above-captioned action cannot proceed in the Middle District of Pennsylvania and that venue must be transferred to the District of New Jersey. (Doc. 17-1 at 1). A defendant may waive lack of venue "by consent or conduct." Neifeld v. Steinberg, 438 F.2d 423, 427 (3d Cir. 1971) (citing Hoffman v. Blaski, 363 U.S. 335, 343 (1960)); DePuy Synthes Sales, Inc. v. Edwards, 23 F. Supp. 3d 472, 480 (E.D. Pa. 2014).

4

$4,800.00 of the total settlement amount, and his counsel will receive $4,200.00 in attorney's fees and costs. (Id.; Doc. 17 at 4). In exchange for payment thereunder, the proposed settlement contains the following release and non-disparagement clauses:

> 7. RELEASE. Employee hereby irrevocably and unconditionally releases and forever discharges the Released Parties and all persons acting by, through, under or in concert with any of them from all claims asserted in the Lawsuit, as well as any and all claims, liabilities, actions, demands, obligations, agreements, or proceedings of any kind, individually or as part of a group action, whether known or unknown, arising out of or relating to Employee's employment or the termination of her [sic] employment, including, but not limited to, all matters in law, in equity, in contract, or in tort, or pursuant to statute, including damages, attorney's fees, costs and expenses, to the fullest extent permitted by governing law, including without limitation, claims arising under the Fair Labor Standards Act, the Pennsylvania Wage Payment and Collection Law, the Pennsylvania Minimum Wage Act, the Pennsylvania Whistle Blower Law, the public policy exception to the employment at will doctrine, the Age Discrimination in Employment Act, the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Employee Retirement Income Security Act, the Americans with Disabilities Act, the National Labor Relations Act, the Family and Medical Leave Act, the Worker Adjustment and Retraining Notification Act, or any other federal, state, or local law, statute, or ordinance to the fullest extent permitted by governing law.
>
> . . .
>
> 9. NON-DISPARAGEMENT. Employee agrees to make no public or private statements that are disparaging of the Company, except that he may furnish factually accurate information requested by any federal, state or local governmental entity or pursuant to subpoena. Employee shall direct any requests for verification of employment only to John Marozzi, who will provide dates

5

of employment, position held and salary if authorized. No
other information will be provided.

(Doc. 17-1 ¶¶ 7, 9).

### B. *Bona Fide* Dispute

The court first addresses the threshold question of whether the proposed settlement resolves a *bona fide* dispute between the parties. Berger alleges that Bell-Mark willfully, intentionally, and maliciously violated state and federal law. (Doc. 1 ¶¶ 13-14, 37). Berger avers that Bell-Mark knew he frequently worked more than 40 hours a week and yet failed to compensate him at a rate of one and one-half times his regular pay as required by the FLSA. (See id. ¶¶ 13, 36-37, 39). According to the complaint, Bell-Mark also violated the FLSA by failing to pay overtime wages to other employees similarly situated to Berger. (Id.) Berger claims that Bell-Mark failed to pay him certain commissions earned and reimburse him for business costs. (Id. ¶ 12; see id. ¶ 62).

Bell-Mark denies these allegations and raises 23 affirmative and other defenses in its answer. (Doc. 10 at 4 ¶ 13, at 7 ¶¶ 36-37, 39, at 12-15 ¶¶ 1-23). Specifically, Bell-Mark denies that Berger worked over 40 hours in any given week during the relevant period and contends that Berger—a salaried employee with sales-related commission opportunities—was exempt from receiving overtime pay. (Id. at 3-4 ¶¶ 12-13, at 7 ¶¶ 36-37, 39; see Doc. 17 at 2). In its answer, Bell-Mark disputes that Berger was not paid commissions earned or that it was unjustly enriched by failing to reimburse Berger for business costs he incurred. (Doc. 10 at 3 ¶ 12, at 10 ¶ 62; see also Doc. 17 at 2). Bell-Mark also rejects Berger's contention

6

that there are other employees similarly situated to him that were unlawfully denied overtime pay under the FLSA. (Doc. 10 at 3-4 ¶¶ 12-13, at 7 ¶¶ 36-37, 39; see also Doc. 17 at 3). In support of this contention, Bell-Mark notes that it is "a small company" that employed few regional sales managers during the relevant time. (Doc. 17 at 2). The parties engaged in mediation and reached the proposed settlement currently under review. (See Doc. 9; Doc. 17-1).

A *bona fide* dispute is one in which there is some doubt whether the plaintiff would succeed on the merits at trial. See Lynn's Food Stores, 679 F.2d at 1354; Kraus, 155 F. Supp. 3d at 530; Deitz, 2013 WL 2338496, at *3. Therefore, an agreement settling FLSA claims must not amount to a "mere waiver of [an employee's] statutory rights," but rather must "reflect a reasonable compromise" of genuinely disputed factual issues. Lynn's Food Stores, 679 F.2d at 1354. Such doubt is manifest in the matter *sub judice*. There are genuine questions as to whether Berger could prove to a jury's satisfaction that he worked the overtime hours alleged and that Bell-Mark knew of and willfully disregarded its obligation to compensate him and other similarly situated employees for overtime hours worked. (See Doc. 1 ¶¶ 13, 36-37, 39; Doc. 10 at 3-4 ¶¶ 12-13, at 7 ¶¶ 36-37, 39; see Doc. 17 at 2-3). Ostensible legal issues include whether Berger and other regional sales managers are exempt employee under the FLSA and whether Berger could satisfy the requirements for a class or collective action. The court concludes that the proposed agreement resolves a *bona fide* dispute between the parties.

## C. Fair and Reasonable Settlement

The court next determines whether the settlement agreement proposed by the parties represents a fair and reasonable compromise of Berger's claims against Bell-Mark. In undertaking this analysis, district courts within the Third Circuit have considered the factors set forth in Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975), which established evaluative criteria for measuring the fairness of proposed class action settlements. See, e.g., McGee, 2014 WL 2514582, at *2; Brown, 2013 WL 5408575, at *2; Deitz, 2013 WL 2338496, at *5-8; Altenbach, 2013 WL 74251, at *2; Brumley, 2012 WL 1019337, at *4-5. Girsh directs courts to examine the following nine factors:

> (1) the complexity, expense[,] and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsh, 521 F.2d at 156-57 (citation omitted). Some of the Girsh factors are of "little help, if not irrelevant, in the single-plaintiff context." Howard v. Phila. Hous. Auth., 197 F. Supp. 3d 773, 777 n.1 (E.D. Pa. 2016). Consequently, courts need not apply the factors mechanically. Id. (quoting Kraus, 155 F. Supp. 3d at 523 n.3). Applying

8

the appropriate Girsh factors, the court concludes that the parties' proposed settlement constitutes a fair and reasonable compromise of Berger's claims.[5]

The parties acknowledge in their joint motion that Berger is likely to face difficulties in succeeding on many of his claims. The parties apparently agree that Berger was properly classified by Bell-Mark as exempt and that he received all earned commissions. (Doc. 17 at 4). The parties further represent that Berger's complaint was "improperly filed as a class and collective action" and that should Berger be required to litigate in New Jersey pursuant to a change of venue, he would be constrained to file his action as a single-plaintiff lawsuit. (Id.) Berger's unreimbursed business expenses remain at issue. (Id.)

The court finds that the parties gained an adequate appreciation for the merits of Berger's claims. See Deitz, 2013 WL 2338496, at *6. The proposed settlement provides Berger with sufficiently reasonable compensation. The $9,000.00 settlement sum, which the parties agreed to after months of settlement talks where both Berger and Bell-Mark were represented by counsel, includes $4,800.00 for alleged unreimbursed business expenses. (See Doc. 17 at 4). Given that the record is silent regarding an estimate of the business expenses that Berger claims went unreimbursed, and in light of the perceived deficiencies in many of Berger's other claims, the agreed-upon sum of $9,000.00 is reasonable compensation for Berger's disputed wage, commission, and business expense claims. Weighing all

---

[5] Berger purports to pursue this action on behalf of himself and "all others similarly situated." (See Doc. 1). Because the proposed settlement is between only Berger and Bell-Mark, (see Doc. 17-1), and because no class or collective action has been certified to date, we approach this matter as a single-plaintiff case.

9

of the applicable Girsh factors, we find that the proposed settlement presents a fair and reasonable resolution of Berger's claims.

### D. Furtherance of the FLSA

The court must also determine whether the proposed settlement furthers or frustrates implementation of the FLSA in the workplace. See McGee, 2014 WL 2514582, at *2; Brown, 2013 WL 5408575, at *3; Altenbach, 2013 WL 74251, at *1. This inquiry requires consideration of three interrelated FLSA objectives: (1) combatting "inequalities in bargaining power between employers and employees," Lynn's Food Stores, 679 F.2d at 1352 (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945)); (2) ensuring widespread employer compliance with the FLSA, McGee, 2014 WL 2514582, at *3 (citing Brumley, 2012 WL 1019337, at *7); and (3) honoring the "private-public character" of employee rights, whereby the public has a general interest in employee well-being and access to fair wages, see Cuttic, 868 F. Supp. 2d at 467; Brown, 2013 WL 5408575, at *3 n.2 (citation omitted); Altenbach, 2013 WL 74251, at *3 (same). Courts assess a settlement's consonance with these FLSA objectives by considering, *inter alia*, the scope of any confidentiality provisions, see, e.g., McGee, 2014 WL 2514582, at *3; Brown, 2013 WL 5408575, at *3; Altenbach, 2013 WL 74251, at *2-3, and the breadth of any release of claims, see, e.g., Giannattasio v. Excellent Pancake, Inc., No. 18-CV-176, 2018 WL 3913109, at *2-3 (E.D. Pa. Aug. 15, 2018); Bettger v. Crossmark, Inc., No. 1:13-CV-2030, 2015 WL 279754, at *8-10 (M.D. Pa. Jan. 22, 2015) (Conner, C.J.). The proposed settlement contains no confidentiality clause; therefore, our analysis turns on the terms of the release provision.

District courts reviewing proposed FLSA settlements frequently require litigants to limit the scope of waiver and release provisions to "claims related to the specific litigation." Singleton v. First Student Mgmt. LLC, No. 13-1744 JEI, 2014 WL 3865853, at *8-9 (D.N.J. Aug. 6, 2014); see also Giannattasio, 2018 WL 3913109, at *2-3; Kraus, 155 F. Supp. 3d at 532-33; Bettger, 2015 WL 279754, at *8-10 (collecting cases). Courts must closely examine FLSA settlements containing "pervasive" release provisions that "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." Brumley, 2012 WL 1019337, at *8 (citation omitted). Provisions requiring employees to generally release and waive all future claims against employers contravene the FLSA objective of maintaining equal bargaining power between employers and employees, thereby "impermissibly frustrat[ing] the implementation of an otherwise fair and reasonable settlement." Kraus, 155 F. Supp. 3d at 533 (citing Bettger, 2015 WL 279754, at *9); see also Giannattasio, 2018 WL 3913109, at *2 (same); Brumley, 2012 WL 1019337, at *8.

In relevant part, the release clause included in the proposed settlement requires Berger to:

> Irrevocably and unconditionally release[] and forever discharge[] the Released Parties . . . from all claims asserted in the Lawsuit, as well as any and all claims . . . whether known or unknown, arising out of or relating to [Berger's] employment or the termination of [his] employment, including, but not limited to, all matters in law, in equity, in contract, or in tort, or pursuant to statute . . . including . . . claims arising under the Fair Labor Standards Act, the Pennsylvania Wage Payment and Collection Law, the Pennsylvania Minimum Wage Act, the Pennsylvania Whistle Blower Law, the public policy exception to the employment at will doctrine, the Age Discrimination in Employment Act, the Civil Rights

11

> Act of 1866, Title VII of the Civil Rights Act of 1964, the
> Civil Rights Act of 1991, the Employee Retirement Income
> Security Act, the Americans with Disabilities Act, the
> National Labor Relations Act, the Family and Medical
> Leave Act, the Worker Adjustment and Retraining
> Notification Act, or any other federal, state, or local law,
> statute, or ordinance . . . .

(Doc. 17-1 ¶ 7).

We find the sweeping breadth of the proposed settlement's release clause inappropriately comprehensive. The release clause precludes Berger from raising any and all claims—both known and unknown—under federal, state, and local law without regard to whether said claims are premised on the factual allegations undergirding this litigation.[6] The clause functions as a complete bar against Berger's ability to litigate against Bell-Mark on any claims arising out of his employment, even those that are unrelated to the overtime pay, commissions, and business expenses at issue in this case.

Tasked with ensuring that implementation of the FLSA is furthered, not frustrated, by the parties' proposed settlement, the court cannot approve the release clause in its present form. We thus approve only the provisions that release Bell-Mark from claims that both fall within the ambit of the FLSA and related New Jersey law and arise from the alleged facts of the instant litigation.

---

[6] Perplexingly, the release extends not only to federal statutes inapposite to Berger's current claims (*e.g.*, the Americans with Disabilities Act), but also bars suits brought under Pennsylvania law and not New Jersey law despite the parties' representation that venue is most proper in New Jersey. (See Doc. 17-1 ¶ 7; Doc. 17 at 2, 4). This fact further underscores our conclusion that the release provision is impermissibly overbroad.

## IV. Conclusion

The court will grant in part and deny in part the parties' joint motion (Doc. 17) for judicial approval of the proposed settlement and will grant the parties an opportunity to remedy the concerns identified herein. An appropriate order shall issue.

        /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: April 30, 2019